Scott H. Frewing (SBN 191311)
Andrew P. Crousore (SBN 202195)
Jay Cha-young Kim (SBN 266360)
Victoria A. Kovanis (SBN 289275)
**BAKER & McKENZIE LLP**
660 Hansen Way
Palo Alto, CA 94304-1044
Telephone: +1.650.856.2400
Facsimile: +1.650.856.9299
scott.frewing@bakermckenzie.com
andrew.crousore@bakermckenzie.com
jay.kim@bakermckenzie.com
victoria.kovanis@bakermckenzie.com

Attorneys for Plaintiff
Facebook, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC. AND SUBSIDIARIES,<br><br>       Plaintiff,<br><br>   v.<br><br>INTERNAL REVENUE SERVICE,<br><br>       Defendant. | Case No.  3:16-cv-05884-LB<br><br>**FACEBOOK'S REPLY IN SUPPORT OF MOTION TO COMPEL AND OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:    June 15, 2017<br>Time:   10:30 am<br>Dept.:  Courtroom 15-C |

i

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF ISSUES .......................................................................................... 1

STANDARD OF REVIEW ........................................................................................... 2

ARGUMENT ................................................................................................................ 2

I.      THE IRS MUST PROVIDE COMPLETE RECORDS ................................. 2

        A.      The IRS Seeks to Deny Facebook the Contents of the Requested Records .............. 2

        B.      The Records Requested are Readily Reproducible ......................................... 4

                1.      Non-exempt records can be produced in native format ................................... 4

                2.      It is "technically feasible" for the IRS office processing Facebook's
                        FOIA requests to produce records in native format and to generate
                        load files ............................................................................................... 6

                3.      Complying with Facebook's request does not constitute a significant
                        interference or burden on the IRS .......................................................... 7

                4.      Providing an email load file is an alternative choice if the IRS chooses
                        not to provide records in the form in which they are maintained ................ 11

                5.      The IRS position is unreasonable .......................................................... 13

II.     TO THE EXTENT THIS DISPUTE IS ABOUT THE FORMAT OF
        PRODUCTION, THE COURT HAS JURISDICTION TO GRANT
        FACEBOOK'S MOTION TO COMPEL AND DENY THE IRS CROSS-
        MOTION FOR SUMMARY JUDGMENT .................................................. 14

        A.      The Court has Jurisdiction Because Facebook Originally Requested Complete
                Records in the Form in Which They Are Maintained ..................................... 14

        B.      Facebook's Efforts to Meet and Confer About the IRS Failure to Produce
                Complete Records Did Not Alter Facebook's Requests ................................. 14

        C.      Exhaustion is Not Jurisdictional and Filing A New Request Would Be Futile ......... 15

                1.      Courts excuse a failure to exhaust administrative remedies upon
                        showing an exception to the exhaustion doctrine, such as futility ................ 15

                2.      Filing a revised FOIA request to clarify the format requested would be
                        futile ..................................................................................................... 17

III.    THE COURT SHOULD DENY SUMMARY JUDGMENT TO THE
        GOVERNMENT BECAUSE MATERIAL FACTS CONTRADICT THE
        GOVERNMENT'S POSITION OR REMAIN IN DISPUTE ...................... 18

        A.      The Facts Demonstrate it is Technically Feasible For the IRS to Release the
                Records ................................................................................................... 18

        B.      The Facts Demonstrate Producing Records in Native Form or With Load Files
                Is Not Overly Burdensome ....................................................................... 19

IV.     ALTERNATIVELY, AN EVIDENTIARY HEARING IS NEEDED TO
        RESOLVE ISSUES OF MATERIAL FACT REGARDING THE IRS'S
        ABILITY TO PRODUCE RECORDS IN THEIR NATIVE FORMAT ...... 20

CONCLUSION ........................................................................................................... 21

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

iii

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

## TABLE OF AUTHORITIES

**Cases**

*Amazon.com, Inc. v. Comm'r,*
   No. 31197-12, 2017 U.S. Tax Ct. LEXIS 9 (T.C. Mar. 23, 2017) ................................................3
*Andrus v. U.S. DOE,*
   200 F. Supp. 3d 1093, 1101 (D. Idaho 2016) .......................................................................16, 17
*Animal Legal Def. Fund v. United States FDA,*
   836 F.3d 987 (9th Cir. 2016) ................................................................................................2, 20
*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ.,*
   905 F. Supp. 2d 161 (D.D.C. 2012) ....................................................................................12, 14
*Ctr. for Pub. Integrity v. FCC,*
   505 F. Supp. 2d 106 (D.D.C. 2007) ...........................................................................................12
*Gonzales & Gonzales Bonds & Ins. Agency v. United States Dep't of Homeland Sec.,*
   No. C-11-02267 DMR, 2012 U.S. Dist. LEXIS 69345 (N.D. Cal. May 17, 2012).....................16
*Hidalgo v. F.B.I.,*
   344 F.3d 1256 (D.C. Cir. 2003) .................................................................................................16
*Hull v. IRS,*
   656 F.3d 1174 (10th Cir. 2011) ...........................................................................................16, 18
*Int'l Diatomite Producers Ass'n v. United States SSA,*
   No. C-92-1634-CAL, 1993 U.S. Dist. LEXIS 21788 (N.D. Cal. Apr. 28, 1993)........................13
*Long v. Immigration & Customs Enforcement,*
   149 F. Supp. 3d 39, 55 (D.D.C. 2015) .........................................................................................8
*Martinelli v. Johnson & Johnson,*
   No. 2:15-cv-01733-MCE-EFB, 2016 U.S. Dist. LEXIS 53146 (E.D. Cal. Apr. 13, 2016)...........11
*McDonnell v. United States,*
   4 F.3d 1227 (3d Cir. 1993)..........................................................................................................17
*Missud v. SEC,*
   No. C-12-0161-DMR, 2012 U.S. Dist. LEXIS 51090 (N.D. Cal. Apr. 11, 2012)..................16, 17
*Nat'l Sec. Counselors v. CIA*
   960 F. Supp. 2d 101, 205 (D.D.C. 2013) ..........................................................................9, 10, 13
*N.L.R.B. v. Robbins Tire & Rubber Co.,*
   437 U.S. 214 (1978)......................................................................................................................4
*NLRB v. Sears, Roebuck & Co.,*
   421 U.S. 132 (1975)......................................................................................................................4
*People for Am. Way Found v. United States DOJ,*
   451 F. Supp. 2d 6 (D.D.C. 2006) ...............................................................................................15
*Public.Resource.org v. United States IRS,*
   78 F. Supp. 3d 1262, 1264 (N.D. Cal. 2015) ...........................................................2, 8, 10, 11
*Rosenfeld v. United States DOJ,*
   No. C 07-03240 MHP, 2008 U.S. Dist. LEXIS 64620 (N.D. Cal. Aug. 22, 2008) ......................16
*San Luis & Delta-Mendota Water Auth. v. United States DOI,*
   No. 1:15-cv-01412 LJO EPG, 2016 U.S. Dist. LEXIS 1905 (E.D. Cal. Jan. 6, 2016).................16
*Schaffer v. Kissinger,*
   505 F.2d 389 (D.C. Cir. 1974) ...................................................................................................20
*Scudder v. CIA,*
   25 F. Supp. 3d 19, 28 (D.D.C. 2014) ............................................................................... *passim*
*In re Steele,*
   799 F.2d 461 (9th Cir. 1986) ................................................................................................16, 17

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

*Sun-Sentinel Co. v. DHS*,
    431 F. Supp. 2d 1258 (S.D. Fla. 2006) ................................................................21

*Tax Analysts v. IRS*,
    214 F.3d 179 (D.C. Cir. 2000) ...........................................................................20

*Taylor v. Appleton*,
    30 F.3d 1365 (11th Cir. 1994) ......................................................................16, 17

*TPS, Inc. v. U.S. Dep't of Defense*,
    330 F.3d 1191 (9th Cir. 2003) ..........................................................................2, 8

*Veritas Software Corp. v. Commissioner*,
    133 T.C. 297 (2009) ...............................................................................................3

*Yeager v. Drug Enf't Admin.*,
    678 F.2d 315 (D.C. Cir. 1982) ..............................................................................13

## Statutes

5 U.S.C. § 552(a)(8)(A) ..............................................................................................6
5 U.S.C. § 552(a)(3)(B) ...................................................................................9, 13, 15
5 U.S.C. § 552(f)(2) ....................................................................................................2
26 U.S.C. § 6103 .......................................................................................................19

## Regulations

26 C.F.R. § 601.702(c)(2)(i) ....................................................................................6, 7
Treas. Reg. § 601.702(c)(4)(i)(G) .............................................................................14

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 81(a) .................................................................................................13

## Other Authorities

S. Rep. No. 104-272, at 15 (1996) ..............................................................................5
H.R. Rep. No. 104-795, at 22 (1996) ........................................................................11

Honorable Ron Wyden, Chairman, and the Honorable Orrin Hatch, Ranking Member,
    Committee on Finance, United States Senate (June 13, 2014),
    http://www.gop.gov/app/uploads/2014/04/IRS_WydenHatchResponse.pdf,
    ("Oursler Letter")...................................................................................................19

*The Sedona Conference Glossary: E-Discovery and Digital Information Management
    (Fourth Edition)*, April 2014, page 27 ...............................................................11, 12

*The Sedona Principles: Second Edition, Best Practices Recommendations and
    Principles for Addressing Electronic Document Production*, page 62 (Sedona
    Conference Working Group Series 2007)...............................................................12

Written Testimony of the Internal Revenue Service Before the House Oversight and
    Government Reform Committee on IRS Records Management Procedures (February
    11, 2016), https://oversight.house.gov/wp-content/uploads/2016/02/IRS-
    Statement-2-11-Document-Preservation.pdf)......................................................19

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

v

Case No 3:16-cv-05884-LB
Notice of Motion and Motion to Compel Production of Certain Documents in Native Form Maintained by the IRS

## INTRODUCTION

The Court should grant Facebook's Motion to Compel and deny the IRS's Cross-Motion for Partial Summary Judgment because (i) Facebook is entitled to the substantive contents of the records it requested in electronic format; and (ii) the records are readily reproducible.

The IRS's arguments regarding reproducibility fail for three reasons. First, the IRS position seeks to deny Facebook the contents of IRS records, such as formulas used in Excel spreadsheets and written comments in documents, and thus the IRS position is not merely about the form of release of those records. Second, contrary to IRS assertions, the office that is processing Facebook's FOIA request is capable of producing the records. The IRS argument is a shell game in which the IRS points to one office's capabilities while a different office is processing the records. Third, the purported burden on the IRS is not substantial.

Further, this Court has jurisdiction. Facebook originally requested copies of records maintained in electronic format. Subsequent efforts to meet and confer about the IRS's failure to produce complete records did not alter Facebook's requests. Even if Facebook had failed to exhaust its administrative remedies (which it did not) by not including in its original FOIA requests a more specific description of the electronic format it desired, this Court has jurisdiction because the futility exception applies.

Finally, if the Court finds that there are material facts in dispute, Facebook requests an evidentiary hearing to resolve whether the IRS is capable of producing records in the form in which they are maintained.

## STATEMENT OF ISSUES

(1) Whether the IRS's failure to provide electronic records in native form has denied Facebook the substance of the records it has requested.

(2) Whether the records are readily reproducible in native format.

(3) Whether Facebook's requests for copies of electronic files in the form in which they are maintained allows this Court to exercise its jurisdiction.

(4) Whether material facts are in dispute.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

1

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

## STANDARD OF REVIEW

At the summary judgment stage, the court must "view the evidence in the light most favorable to the non-moving party." *TPS, Inc. v. U.S. Dep't of Defense*, 330 F.3d 1191, 1196 (9th Cir. 2003); *see also Scudder v. CIA*, 25 F. Supp. 3d 19, 28 (D.D.C. 2014) (summary judgment is inappropriate where affidavits from opposing parties contradict one another "over the critical factual issue" of the case).

An agency does not enjoy a blanket exemption from judicial review of its justification for declining to produce records in readily reproducible formats, although agency affidavits should receive deference. *See Public.Resource.org v. United States IRS*, 78 F. Supp. 3d 1262, 1264 (N.D. Cal. 2015); *see also Scudder*, 25 F. Supp. 3d at 39, 50 ("even substantial deference must give way in the face of disputed material facts, or at least await resolution of those facts").

If a genuine issue of material fact exists in a FOIA case, "the district court should proceed to a bench trial or adversary hearing… with evidence subject to scrutiny and witnesses subject to cross-examination." *Animal Legal Def. Fund v. United States FDA*, 836 F.3d 987, 990 (9th Cir. 2016).

## ARGUMENT

### I.    THE IRS MUST PROVIDE COMPLETE RECORDS

#### A.    The IRS Seeks to Deny Facebook the Contents of the Requested Records

This dispute is about the production of records.  Under FOIA, "record" does not refer to partial records, incomplete records, or unusable records.  Record means record – in its entirety.  As explained in Facebook's Motion to Compel, a record is "any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format."  5 U.S.C. § 552(f)(2) (2012).  A "record" is thus a record whether it is in electronic or other format.

This dispute is *not*, therefore, primarily about format or metadata.  Instead, the IRS is seeking to deny Facebook the substantive content of records by claiming that the substance resides in a particular electronic field or format. [1]  Contrary to the IRS position, Facebook is not seeking a

---

[1] While this case is not about metadata, the IRS essentially concedes that metadata is part of electronic records in the FOIA context by admitting that metadata may include statutory exemptions from disclosure.  *See* Hartford Declaration ¶¶ 15-16, May 11, 2017, ECF No. 38-1 ("Hartford

2

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

fundamental change to the FOIA landscape or making an unprecedented request. Facebook has merely asked for the substantive "records" to which it is entitled under the law.

The content of records in today's modern world include, at a bare minimum:

(1) formulas and the ability to review data as organized in a Microsoft Excel file, and

(2) written comments in Microsoft Word and PowerPoint.

These are fundamental, substantive components of records, not segregable metadata. At the very least, the IRS should be providing records with this substantive information intact.

Formulas and the ability to review data as organized in a Microsoft Excel file is especially important for IRS records. The IRS itself regularly demands that taxpayers provide spreadsheets in a native form in which the IRS can see formulas and how data was arranged. *See* Declaration of Jay Cha-young Kim, April 13, 2017, ECF No. 29 ("Kim Decl. 2"), Ex. A at 16, (IRS summons requiring Excel spreadsheets "in native file format 'as kept in the ordinary course of business'… maintain[ing] the integrity of all source, custodian, application, embedded and related file system metadata"). Further, economic analysis, using relatively complex spreadsheets is common in transfer pricing matters. S*ee e.g.*, *Amazon.com, Inc. v. Comm'r*, No. 31197-12, 2017 U.S. Tax Ct. LEXIS 9 (T.C. Mar. 23, 2017) (describing various economic models including an IRS discounted cash flow analysis and income method analysis); *Veritas Software Corp. v. Commissioner*, 133 T.C. 297 (2009) (describing an IRS discounted cash flow analysis). Hence, understanding IRS records in such matters often requires evaluating various economic inputs including discount rates and assumptions about the economic life of intangibles. *See Amazon.com*, 2017 U.S. Tax Ct. LEXIS 9. Excel spreadsheets printed over thousands of PDF pages, devoid of formulas or the ability to review the data effectively, are not the "record" of such analysis.

Similarly, comments in Microsoft Word and PowerPoint can be important substantive portions of records. Comments can include just as much substance as the main text of a document, like in PowerPoint presentations where the main text consists of only short bullet points and the comments section includes detailed notes about each slide. There is no reason this text should be

---

Decl.") (metadata in this case "almost certainly includes information that is statutorily exempt and/or prohibited from disclosure"). Information cannot be subject to a FOIA exemption if it is not part of the record in the first place.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

treated differently than other text in a record.

Facebook requested copies of records "whether maintained in electronic or hardcopy format."  Declaration of Jay Cha-young Kim, October 11, 2016, ECF No. 1-5 ("Kim Decl. 1"), Ex. A at 1; Kim Decl. 1, Ex. B at 1-2.  Facebook's FOIA requests did not have to spell out every way *not* to produce the records.  For example, Facebook should not have to explain to the IRS that Facebook does not want records shredded into confetti, or that it is unreasonable for the IRS to fold records into origami swans.  The IRS position that Facebook had to do more than say it wanted records in the form that they were maintained, or that Facebook had to specify that it wanted IRS Excel records to include formulas or documents to include written comments, is equally unreasonable.

Facebook properly exercised its right to complete records under FOIA, contrary to the IRS suggestion that Facebook's FOIA requests are an end-run around discovery in Tax Court.  As even the IRS acknowledges, the purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also* Def.'s Cross-Mot. and Resp. at 18.  It has been ten months since the IRS alleged a significant tax deficiency without providing any of the typical underlying information supporting a notice of deficiency.  Complaint ¶¶ 11-13, October 11, 2016, ECF No. 1.  FOIA provides a mechanism for all taxpayers to hold the government accountable.  The right to seek documents under FOIA is not diminished because a taxpayer is a litigant against the government in other matters.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10 (1975) (a FOIA requester's rights are "neither increased nor decreased" by having an interest greater than the average member of the public).

### B.    The Records Requested are Readily Reproducible

#### 1.    *Non-exempt records can be produced in native format.*

Where documents already exist in the requested format in an agency's system and "would require no conversion to a different format to comply with the plaintiff's format request, the records should be plainly 'readily reproducible.'"  *Scudder v. CIA*, 25 F. Supp. 3d 19, 43 (D.D.C. 2014).  As a result, the fact that the IRS ignored the language of Facebook's requests, converted records from

4

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

the format in which they are maintained into a new format that strips away the substance of the record, and claims that it must do so for all records, including for those that do not require redactions, should not be a reason the IRS can cite to avoid producing the records. The IRS argument that it cannot produce records in the native format requested fails for at least two reasons.

First, many records likely will not require any redactions and can thus be produced in native form. In its Cross-Motion and Response, the IRS improperly expands Congress' statement about redactions to cover all records, including those for which the entire contents are non-exempt. Specifically, the Congressional language the IRS cites applies only to "partially exempt records" not records to which no exemptions apply:

> "Likewise, the 'reasonable efforts' qualification could relieve agencies of the obligation of releasing the original form of partially exempt records in circumstances where agencies need to handle the records in a certain form for purposes of redaction and, therefore, cannot readily disclose them, as redacted, in a previously existing form."

S. Rep. 104-272 at *15; *see* Def.'s Cross-Mot. and Resp. at 11. The IRS ignores that this statement refers to "partially exempt records" and does not extend to records without exemptions.

Second, to the extent electronic records require redactions, there are multiple solutions for release other than denying production of the native record itself. Broadly speaking, there are two types of potential redactions to electronic records: (1) redactions to the non-visible metadata of a document, and (2) redactions to the visible content of a document. Native files can generally be produced in both cases.

To the extent the IRS must redact one or more fields of non-substantive metadata, the IRS can strip the metadata from the native record and produce the file without the metadata. For example, an entire native record should not be withheld simply because the IRS misfiled the document and the file path shows the name of a different taxpayer. *See* Hartford Decl. ¶ 15 (citing "FilePath" as an example of metadata that might require redaction). *See also* Souvandara Declaration ¶¶ 11-12, May 11, 2017, ECF No. 38-2 ("Souvandara Decl.") (stating that review of metadata in Clearwell requires conversion to TIFF or PDF but not saying that the IRS lacks the ability to produce natives without the specific exempt metadata field). The IRS does not allege that it is unable to produce a native file stripped of exempt metadata, presumably because such an

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

approach is indeed feasible.

To the extent the IRS must redact the substantive content of a document (i.e., not metadata), such as a cell in an Excel spreadsheet or a comment in a document, the IRS asserts that Clearwell does not permit production of a redacted record in native form, but the IRS makes no representations about the potential number of such records or options for production from outside of Clearwell. If the number of such records requiring redaction is small, the IRS could readily redact the exempt portion of the records and produce the remainder of the file in native format outside of Clearwell. This could be done by producing the redacted file with the redacted information simply deleted (while providing Facebook notice of the redaction) or, as an alternative, redacting an Excel cell, locking the file, and producing the locked Excel file. To the extent there are records for which it is literally not possible for the IRS to produce the record in native format (a subset of the IRS records that the IRS has not specified), it may be reasonable for the IRS to convert the document to PDF or TIFF, redact in its e-discovery tool, and produce in PDF or TIFF form, but reasonableness dictates that this should be the last resort for release. *See* Souvandara Decl. ¶ 8 (Clearwell has the capability to redact documents). Further, the documents still must be released in legible form, which the IRS has not done here.

Finally, it is unreasonable for the IRS to produce all records in PDF format simply because some documents require redactions. *See* 5 U.S.C. § 552(a)(8)(A) (an agency must consider partial disclosure and take reasonable steps to segregate and release nonexempt information). The fact that the IRS uses an e-discovery tool like Clearwell because "of the sheer scale" (Hartford Decl. ¶ 13) cannot be an excuse for not producing records in the form in which they are maintained because all agencies could then use e-discovery tools as a rationale for denying native copies of records. Further, the same logic would enable taxpayers and other litigants adverse to the IRS to argue that their use of an e-discovery platform prevents native production, which contradicts common sense.

> ### 2. *It is "technically feasible" for the IRS office processing Facebook's FOIA requests to produce records in native format and to generate load files.*

The IRS is required to produce records if the IRS office doing the production has the capability to do so, which is the case here. *See* 26 C.F.R. § 601.702(c)(2)(i) ("readily reproducible"

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

standard means "with respect to electronic format, a record or records that can be downloaded or transferred in tact to a floppy disk, computer disk (CD), tape, or other electronic medium using equipment currently in use by the office or offices processing the request.").

The IRS Office of Chief Counsel is processing Facebook's FOIA requests, and it has the necessary capabilities.  Hartford Decl. ¶¶ 7, 11, 13 (Office of Chief Counsel has chosen to use Clearwell to process Facebook's FOIA requests); Souvandara Decl. ¶ 6 (Office of Chief Counsel has version 8.2.0 of Clearwell); Declaration of Jay Cha-young Kim, May 26, 2017, ("Kim Decl. 3"), Exhibit A at 18[2] (Clearwell enables the IRS to export native files); Souvandara Decl. ¶ 13 (Clearwell enables the IRS to export load files).   The IRS admits that IRS custodians maintain files in Microsoft Word, Excel, and PowerPoint formats, among other formats, and that IRS custodians use email.  Higley Declaration ¶¶ 9-10, May 11, 2017, ECF No. 38-3 ("Higley Decl.").

Contrary to the IRS statements in its opposition and cross-motion, the IRS Disclosure Division is not processing the request, and it is thus *not* the "proper focus of the Court's 'readily reproducible' inquiry."  Def.'s Cross-Mot. and Resp. at 12, n.9; Hartford Decl. ¶¶ 7, 11 (Office of Chief Counsel, Procedure & Administration division, is responsible for processing documents responsive to Facebook's FOIA requests and coordinating all aspects of the FOIA litigation).

In summary, Facebook requested records in the format they were maintained, and the relevant IRS office has the necessary capabilities to produce these files.  It is thus "technically feasible" for the IRS to produce the records in the format requested.

       3.     *Complying with Facebook's request does not constitute a significant interference or burden on the IRS.*

The IRS claim that Facebook's request for records in their native form (i.e., Facebook's request for the "records") is a significant burden fails for two reasons.

First, as described above, Facebook has merely requested the "records," and the IRS is required to produce records in the format it creates and retains them.  "When an agency already

---

[2] This refers to the "Export and Production Guide" for version 8.2 of the Veritas e-discovery Platform.  Per paragraph 3 of the Souvandara Declaration, Veritas is the commercial vendor of Clearwell.  However, this Export and Production Guide does not match Exhibit 1 to the Souvandara Declaration exactly.

7

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

creates or converts documents in a certain format--be it for FOIA requestors, under a contract, or in the ordinary course of business--requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden." *TPS, Inc. v. U.S. Dep't of Defense*, 330 F.3d 1191, 1195 (9th Cir. 2003). The IRS cannot cite burden for producing records in the form it maintains them.

Second, it is not enough for the IRS to merely allege that a burden exists, it must demonstrate a *significant* burden, which it has failed to do in this matter. *See Public.Resource.org v. United States IRS*, 78 F. Supp. 3d 1262, 1266 (N.D. Cal. 2015) ("The agency's evidence of burden . . . must be not only compelling, but also demonstrate that compliance with a request would impose[] a *significant* burden or interference with the agency's operation.") (emphasis in the original). "Among the factors that a court may consider in assessing the claimed burden are the amount of time, expense, and personnel that would be required to complete document searches and production, as well as whether the agency has the existing technology or would have to purchase new technology to perform those tasks." *Long v. Immigration & Customs Enforcement*, 149 F. Supp. 3d 39, 55 (D.D.C. 2015).

The IRS' burden claims are demonstrably incorrect or overstated for four reasons:

(1) The IRS has the necessary technology. As discussed above, the IRS Office of Chief Counsel is using Clearwell, which can produce both native files and load files. Hartford Decl. ¶ 13; Kim Decl. 3, Ex. A at 18; Souvandara Decl. ¶ 13.

(2) The IRS claim that it will take "thousands of hours" to review metadata is unsupported. *See* Def.'s Cross-Mot. and Resp. at 13 (alleging "thousands of hours reviewing metadata fields for statutory exemptions"). IRS Special Counsel Hartford states that he has no basis for estimating the amount of time required to review the requested metadata. The IRS statement that it may take the same amount of time to review one *line* of metadata as it would an entire *page* of text, amounting to an estimate of 1,067 hours of review, is thus pure, unreasonable conjecture. Def.'s Cross-Mot. and Resp. at 7; Hartford Decl. ¶¶ 16, 19 (has "no basis for estimating" whether review of metadata would exceed this estimate). Indeed, it is unreasonable to assume it will take the same amount of time to review a single line of metadata as it would an entire page of text because a page of text can

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

typically hold much more than a single line. If the IRS's unsupported, speculative estimate of hours is adjusted to equate five lines of metadata with a single page of text, the IRS's estimate of burden shrinks from 1,067 hours of review to 213 hours of review. *See* Def.'s Cross-Mot. and Resp. at 7; Hartford Decl. ¶ 19 (providing IRS calculation of hours).

(3) The IRS claim that it must review multiple metadata fields (Hartford Decl. ¶¶ 15-16) is a paper tiger because many of the metadata fields cited by the IRS cannot include exempt information. For example, it is impossible to perceive how the "date created," "date last modified," "date sent," "date received," the bates numbering requested, "volume," "record type," "file size," "MD5 Hash," or "page count" fields could ever be exempt from disclosure or require redactions. *See* Motion to Compel, Attachment A, April 13, 2017, ECF No. 28-1. Presumably because it cannot do so, the IRS does not offer any evidence (beyond rank speculation) that these fields contain exempt information.

(4) To the extent it may be accurate, the IRS allegation of the "thousands of hours" necessary to review metadata is a function of its own systems, and thus cannot be cited as justification for failing to comply with FOIA. *See Scudder*, 25 F. Supp. 3d at 39, 43, ("The defendant's position is difficult, if not impossible, to reconcile with the statutory language of 5 U.S.C. § 552(a)(3)(B), particularly since the defendant itself created the security procedures it now says make the production of documents in electronic format prohibitively time consuming and costly.") ("A FOIA request for records in an existing format should not be frustrated due to the agency's decision to adopt a production process that nonetheless renders release in that format highly burdensome.") (internal quotations omitted).

Courts have found FOIA requests subject to far more burdensome review processes readily reproducible. For example, in *Nat'l Sec. Counselors v. CIA*, the State Department claimed that providing plaintiff with electronic versions of documents would "be very costly and time-consuming" because of the additional steps to comply with security procedures. 960 F. Supp. 2d 101, 205 (D.D.C. 2013). The State Department's process of complying with information security procedures involved (1) review by an analyst to identify releasable records; (2) using special software, placement of the records on the classified network for further review by an Information Systems Security Officer ("ISSO"); (3) inspection by the ISSO a second time on a "line-by-line

9

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

basis;" (4) creation of a request for support from the Bureau of Information Resource Management ("IRM"); (5) following a virus scan, transfer of the records from IRM to an analyst; and (6) a comparison of the contents of each file by an analyst. *Id.* The court was "skeptical" about the "labyrinthine steps" involved and ultimately found that, "even considering the 'substantial weight' owed to the State Department's declaration," the State Department had not carried its burden and therefore, the State Department's motion for summary judgment on this issue was denied. *Id.* at 205-206.

The IRS's burden in response to Facebook's requests is substantially less than the burdens found not to be significant in *Nat'l Sec. Counselors*. Instead of the complicated six-step process described in *Nat'l Sec. Counselors*, the alleged burden on the IRS consists of using existing technology to either produce native files for those records not containing any exempt information, or for those files that require redaction, produce a load file of metadata. *See* Souvandara Decl. ¶ 16; Hartford Decl. ¶ 17.

Further, the burden on the IRS is substantially less than that which the IRS imposes upon taxpayers such as Facebook. As of May 26, 2017, Facebook's first-tier review of documents requested by the IRS in the related summons enforcement action has required over 24,000 hours. Kim Decl. 3 ¶ 2. Facebook has produced 1,596,610 pages to the IRS. *Id.* Certainly the burden that the IRS imposes upon taxpayers should be a metric of the reasonableness of the agency's own efforts.

While a request for native files is not new to the IRS (*see Public.Resource.org*, 78 F. Supp. 3d at 1263), to the extent the IRS does incur any one-time costs for creating processes, training, or other steps (*see* Def.'s Cross-Mot. and Resp. at 13), these investments will be applicable to the inevitable future requests that the IRS produce native files, and they are not a valid excuse for failing to produce the actual IRS records. In *Public.Resource.org v. United States IRS*, the court similarly dealt with an argument from the IRS that to produce records in the form in which they are maintained the IRS would have to "develop a new protocol, train its employees, and develop the technical capability" to produce the records "with exempt information redacted." 78 F. Supp. 3d at 1264. In rejecting the notion that "one-time expenses" constituted a significant burden, the court

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

10

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

said, "[i]f that was a valid excuse, anytime there was a request for production in a format that the agency has not accommodated before, the agency could argue undue burden." *Id.* at 1266. The court also recognized that "Congress demanded that agencies act proactively to enhance public access to and use of government information" and that "'one-time expenses' related to developing a protocol and training staff may well be recouped" if the IRS responds to other similar requests. *Id.* at 1266-67. The same is true in this case.

Finally, the IRS claim that the purported burden is inconsistent with Congress' intent wrongly conflates the "search" for records with the production of those records. The legislative history cited by the IRS states "[e]lectronic *searches* should not result in any greater expenditure of agency resources than would have occurred with a conventional paper-based search for documents." Def.'s Cross-Mot. and Resp. at 13 (citing H.R. Rep. No. 104-795, at *22) (emphasis added). The search terms in this matter are not currently in dispute, and the universe of 320,000 potentially responsive records is unchanged by producing the complete electronic records. *See* Hartford Decl. ¶ 12 (citing 320,000 potentially responsive records).

> 4.    *Providing an email load file is an alternative choice if the IRS chooses not to provide records in the form in which they are maintained.*

Facebook offered the suggestion of load files as an alternative way to produce email metadata, because for many email productions, parties produce load files instead of email in native form. *See, e.g., Martinelli v. Johnson & Johnson*, No. 2:15-cv-01733-MCE-EFB, 2016 U.S. Dist. LEXIS 53146, at *21-25 (E.D. Cal. Apr. 13, 2016) (providing an example of email metadata fields included in a load file). Facebook made this suggestion as a reasonable alternative should the IRS prefer it to producing emails in native form.

Further, load files are not new records. According to the Sedona Conference, a "load file" is:

> "A file that relates to a set of scanned images or electronically processed files that indicates where individual pages or files belong together as documents, to include attachments, and where each document begins and ends. A load file may also contain data relevant to the individual documents, such as selected metadata, coded data, and extracted text. Load files should be obtained and provided in prearranged or standardized formats to ensure transfer of accurate and usable images and data."

*The Sedona Conference Glossary:  E-Discovery and Digital Information Management (Fourth*

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

*Edition)*, April 2014, page 27.  A load file is, therefore, data from a record, indeed it is a portion of the "record" produced in a usable form when native production is not possible.   For example, without load files, images in Tagged Image File Format ("TIFF") or Adobe Portable Document Format ("PDF") "are the equivalent of printed pages from the screen" and by themselves "lose searchable text and metadata that might enable better understanding and utility of the evidence." *See The Sedona Principles: Second Edition, Best Practices Recommendations and Principles for Addressing Electronic Document Production*, page 62 (Sedona Conference Working Group Series 2007).  Load files simply provide data from a record, in a redactable format.  The IRS already converts documents from one electronic format to another simply to redact them.  *See* Souvandara Decl. ¶ 11.  This is a similar concept, but with a far more useful outcome that retains the fundamental components of the entire electronic record, not just a partial record.

The IRS argument about load files relies on several cases that are factually distinguishable and do not apply here.  For example, the IRS cites *Ctr. for Pub. Integrity v. FCC*, 505 F. Supp. 2d 106, 114 (D.D.C. 2007), to suggest that load files are new records because a format requiring more than redactions is a request for a new record, but in *Ctr. for Pub. Integrity*, plaintiff proposed replacing "redacted numbers with new numbers, which the FCC itself would have to select."  This exercise involved the input of new information affirmatively added by the FCC, not just the delivery of existing records in a different format, like load files.  Further, the IRS misuses a quote from *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ.*, 905 F. Supp. 2d 161 (D.D.C. 2012) (hereafter, "CREW"), claiming that the production of metadata requires the creation of new documentation.  Def.'s Cross-Mot. and Resp. at 16.  In *CREW*, the Department of Education explained that the department's email records are not readily reproducible in electronic format and their email retention system would "not display or print the BCC field for any retrieved email."  *Id.* at 171 (internal quotations omitted).  Thus, CREW's request actually required creating documentation that did not exist.  *See id.* at 172.  Facebook's situation is different in that there is no dispute that the metadata Facebook requested in load files actually exists.

Creation of a load file does not create a "new document" because creating a new document requires more than just the production of an existing record in a slightly different format.  *See*

*Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982) (agencies are not "required to commit to paper information that does not exist in some form as an agency 'record'" or "write an opinion or add explanatory material to a document"). Similarly, deleting information from a record does not constitute a new record "even if all but one or two items of information have been deleted." *Id.*; *see also Int'l Diatomite Producers Ass'n v. United States SSA*, No. C-92-1634-CAL, 1993 U.S. Dist. LEXIS 21788, at *6-7 (N.D. Cal. Apr. 28, 1993) (finding it proper under FOIA to delete information from the record). A load file is simply a record with part of the record removed or deleted, to be produced separately.

5.     *The IRS position is unreasonable.*

The FOIA "readily reproducible" rule includes a standard of reasonableness. 5 U.S.C. § 552(a)(3)(B) (2012) (agency must "make reasonable efforts to maintain its records in forms or formats that are reproducible") ; *see also Nat'l Sec. Counselors*, 960 F. Supp. 2d at 202 (reasonableness requirement is the second issue under the FOIA "readily reproducible" provision).

The IRS has not made a reasonable effort, and it has ignored its own regulations. It is unreasonable to produce an Excel file over 16,000 PDF pages in a format that makes discerning what edits, changes, or comments the IRS may have made to the file wholly impossible. *See* Kim Decl. 2 ¶ 8. It is similarly unreasonable to deny requesters native electronic formats. Doing so, makes the choice of formats an illusion that basically comes down to paper or PDF, rendering the readily reproducible requirement under both FOIA and the Treasury Regulations essentially pointless.

"Reasonable" in a FOIA context should be no different than what is reasonable in a civil discovery context. This is especially true here, where the IRS is using the same e-discovery technology to process Facebook's FOIA requests as the IRS uses in Tax Court. *See* Hartford Decl. ¶ 13. As a result, it is reasonable to apply the same standard of reasonableness for release of FOIA records as the production of civil discovery. Further, the IRS suggestion that the civil discovery rules do not apply to FOIA matters is directly contradicted by Fed. R. Civ. P. 81(a), which states that the rules apply to all but certain specified federal proceedings.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

**II.    TO THE EXTENT THIS DISPUTE IS ABOUT THE FORMAT OF PRODUCTION, THE COURT HAS JURISDICTION TO GRANT FACEBOOK'S MOTION TO COMPEL AND DENY THE IRS CROSS-MOTION FOR SUMMARY JUDGMENT**

**A.    The Court has Jurisdiction Because Facebook Originally Requested Complete Records in the Form in Which They Are Maintained**

Facebook's two August 5, 2016 FOIA requests sought documents in the form in which they were maintained.  Both requests sought "copies of the following….whether maintained in electronic or hardcopy format."  Kim Decl. 1, Ex. A at 1, Ex. B at 1-2.  This is in addition to the language the IRS quoted in its Cross-Motion for Summary Judgment indicating that Facebook requested copies in accordance with Treas. Reg. § 601.702(c)(4)(i)(G).  Def.'s Cross-Mot. and Resp. at 9.

The IRS claim that Facebook "merely asked that the IRS search for records maintained in electronic or hardcopy format" is false.  Def.'s Cross-Mot. and Resp. at 9.  The plain language requested "copies" of documents "maintained in electronic or hardcopy format" not just the search for such records.  Kim Decl. 1, Ex. A at 1, Ex. B at 1-2.  Facebook requested copies of electronic records, and the IRS cannot now credibly claim that Facebook had to say more to obtain complete copies of those records.

The IRS repeats its citation to the *CREW* case, but it does not change the fact that in this case Facebook requested *copies* of electronic records, which was not the case in CREW. 905 F. Supp. 2d at 171 (request for records "regardless of format, medium, or physical characters, and including electronic records and information")  (internal quotations omitted).   Further, the court in *CREW* found that the records requested "would require the creation of documentation rather than the production of what exists" and thus the information was not readily reproducible.  *Id.* at 172.   Here, Facebook sought copies of documents in the format in which they were maintained, and the IRS does not allege that the records do not exist in the requested format.  *CREW* is not applicable.

**B.    Facebook's Efforts to Meet and Confer About the IRS Failure to Produce Complete Records Did Not Alter Facebook's Requests**

The IRS alleges that Facebook's inquiry in early 2017 about the IRS producing a single Excel file on 16,000 pages, without the substantive formulas that can be the key substance of the record, somehow modified Facebook's request for electronic records.  Def.'s Cross-Mot. and Resp. at 11.  This IRS position does not pass the straight-face test.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

In August 2016, Facebook requested copies of IRS records maintained in electronic format. Kim Decl. 1 ¶ 2; Kim Decl. 1, Ex. A at 1, Ex. B at 1-2.  On October 11, 2016, after the IRS failed to meet the statutory deadline, Facebook filed its complaint in this matter.  On November 28, 2016, the IRS made its first release of records, and on February 28, 2017, the IRS produced more than 16,000 pages of an Excel file.  Kim Decl. 2 ¶¶ 7-8.

Facebook's early 2017 efforts to confer with government counsel regarding the IRS producing incomplete records, including omitting the formulas from Excel spreadsheets, did not change or expand the scope of Facebook's underlying requests, as claimed by the IRS.  Kim Decl. 2 ¶ 9 (Facebook discussed its request for certain native electronic files over the course of several phone calls with counsel for the IRS); *see* Def.'s Cross-Mot. and Resp. at 11.  The same search terms still apply and the IRS's universe of 320,000 potentially responsive records is unchanged by any clarification about format.  *See* Hartford Decl. ¶ 12 (citing 320,000 potentially responsive records).

Even if Facebook's discussion of the IRS failures did somehow clarify Facebook's requests, it is not unusual to clarify a FOIA request after the initial request has already been made.  "FOIA requests are frequently clarified or modified even after a lawsuit is filed."  *People for Am. Way Found v. United States DOJ*, 451 F. Supp. 2d 6, 12 (D.D.C. 2006).  Allowing FOIA requesters the ability to clarify encourages communication and the prospect of compromise or settlement.  *See id.*

Finally, although Facebook originally requested copies of records in the form in which they are maintained (i.e., electronic records in electronic form), the law does not require that a request for a particular format be in the original FOIA request.  *See* 5 U.S.C. § 552(a)(3)(B) (no requirement that a format "request" must be in an original FOIA request).  The "readily reproducible" rule refers only to the "format *requested*" without any time limit for communications about format. 5 U.S.C. § 552(a)(3)(B) (2012) (emphasis added).

### C.    Exhaustion is Not Jurisdictional and Filing A New Request Would Be Futile

   1.    *Courts excuse a failure to exhaust administrative remedies upon showing an exception to the exhaustion doctrine, such as futility.*

Even if Facebook had failed to exhaust its administrative remedies (which it did not) by including in its original FOIA requests a more specific description of the electronic format it desired,

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

this Court has jurisdiction.   Courts point to *In re Steele*, 799 F.2d 461, 466 (9th Cir. 1986), as the leading Ninth Circuit case addressing dismissal for failure to exhaust, but courts reach different conclusions as to whether *In re Steele* stands for the proposition that exhaustion is jurisdictional. The better analysis is that exhaustion is not jurisdictional, as the *In re Steele* court considered application of the futility exception.  *See e.g., Andrus v. U.S. DOE*, 200 F. Supp. 3d 1093, 1101 (D. Idaho 2016) ("For lack of unequivocal language in FOIA otherwise requiring exhaustion for purposes of subject matter jurisdiction, the Court therefore considers exhaustion under FOIA a jurisprudential requirement.") ("If exhaustion was strictly jurisdictional, the Ninth Circuit would have had no need to address the issue of the 'futility exception' at all.  In that sense, *In re Steele*  actually supports a conclusion that exhaustion is a jurisprudential doctrine, rather than a jurisdictional one."); *see also Rosenfeld v. United States DOJ*, No. C 07-03240 MHP, 2008 U.S. Dist. LEXIS 64620 (N.D. Cal. Aug. 22, 2008) (for FOIA cases, exhaustion is a prudential consideration rather than jurisdictional).  Other courts in the Ninth Circuit have stopped short of deciding whether exhaustion is jurisdictional, but have ruled that there are settled exceptions to the failure to exhaust doctrine.  *See Gonzales & Gonzales Bonds & Ins. Agency v. United States Dep't of Homeland Sec.*, No. C-11-02267 DMR, 2012 U.S. Dist. LEXIS 69345, at *10 (N.D. Cal. May 17, 2012) ("[I]n circumstances where failure to exhaust would not undermine the 'purposes and policies' behind the requirement, courts have recognized exceptions to the administrative exhaustion doctrine."); *Missud v. SEC*, No. C-12-0161-DMR, 2012 U.S. Dist. LEXIS 51090, at *11 (N.D. Cal. Apr. 11, 2012) ("courts have recognized exceptions to the administrative exhaustion doctrine"); *San Luis & Delta-Mendota Water Auth. v. United States DOI*, No. 1:15-cv-01412 LJO EPG, 2016 U.S. Dist. LEXIS 1905 (E.D. Cal. Jan. 6, 2016) ("certain prudential considerations, such as futility, may warrant departure" from the general rule of the exhaustion doctrine).

These cases are consistent with other circuits that find that failure to exhaust is not jurisdictional.  *See Hull v. IRS*, 656 F.3d 1174, 1181 (10th Cir. 2011) ("we seize this opportunity for clarity by joining the majority of our sister circuits in concluding exhaustion under FOIA is a prudential consideration rather than a jurisdictional prerequisite");  *Hidalgo v. F.B.I.*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (exhaustion is a jurisprudential doctrine in the FOIA context); *Taylor v.*

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

*Appleton*, 30 F.3d 1365, 1367 n.3 (11th Cir. 1994) (regarding FOIA cases, "[e]xhaustion of administrative remedies is not a jurisdictional requirement…"); *McDonnell v. United States*, 4 F.3d 1227, 1240 n.9 (3d Cir. 1993) (failure to exhaust in the FOIA context is "a prudential consideration that the court takes into account in determining whether to exercise subject matter jurisdiction").

Regardless of whether exhaustion is jurisdictional, futility is an exception to the failure to exhaust doctrine in the Ninth Circuit.  This exception applies when a party has not exhausted its administrative remedies, "but to do so would not 'further the purposes underlying the doctrine of exhaustion.'" *Andrus*, 200 F. Supp. 3d at 1101 (quoting *In re Steele*, 799 F.2d at 466); *see also Missud*, 2012 U.S. Dist. LEXIS 51090, at *11 ("courts will entertain a case when exhaustion would have been futile") (internal quotations omitted).  The purpose of the exhaustion doctrine is to "allow the agency to 'exercise its discretion and expertise and the opportunity to make a record for the district court to review.'" *Andrus*, 200 F. Supp. 3d at 1101-1102 (quoting *In re Steele*, 799 F.2d at 466).  "To show futility, [i]t must appear that pursuing available administrative remedies would have been clearly useless, that the ultimate denial of relief was a certainty." *Missud*, 2012 U.S. Dist. LEXIS 51090, at *11 (internal quotations omitted).  "[T]he Court should not engage in guesswork." *Andrus*, 200 F. Supp. 3d at 1102.

2.     *Filing a revised FOIA request to clarify the format requested would be futile.*

The Court does not need to engage in guesswork because the IRS has established a clear record that a revised FOIA request would be useless.  The IRS's declarations address all of its concerns about depriving the Disclosure Office[3] of an opportunity to respond.  *See* Def.'s Cross-Mot. and Resp. at 10.  If the IRS had properly understood Facebook's original requests to include records in native format:

(1) "the Disclosure Office would have [had] an opportunity to inform the requester that load files do not exist and records cannot be reviewed and redacted in native format, and inquire as to whether the requester wanted to narrow its request to exclude native records or otherwise withdraw

---

[3] Although the IRS Office of Chief Counsel is currently processing Facebook's FOIA requests, the Disclosure Office originally responded, which is consistent with IRS protocol. *See* Kim Decl. 1, Ex. C; Higley Decl. ¶ 5 (once a FOIA request is received by the IRS, "it is assigned to a Disclosure Manager").

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

17

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

its request," Burger Declaration ¶ 10, May 11, 2017, ECF No. 38-4 ("Burger Decl.");

(2) the Disclosure Office would have found that the requested records were not readily reproducible, *see* Burger Decl. ¶ 12 (the Disclosure Office strips all metadata upon import into AFOIA and electronic files are converted to TIFF images);

(3) there could have been no offer for the release of native files, like Excel, as the Disclosure Office converts all of its electronic files to TIFF images in AFOIA, *see* Burger Decl. ¶ 12; and

(4) there would have been no increased fees to search and review metadata because metadata is "stripped" from electronic files upon import into AFOIA, *see* Burger Decl. ¶ 12.

The Office of Chief Counsel has similarly shown that it would deny a revised FOIA request given that Facebook has already tried to meet and confer over phone calls with counsel for the IRS several times to resolve this dispute. Kim Decl. 2 ¶ 9.

The IRS has compiled a sufficient record of exhaustion through its designated experts. *See Hull*, 656 F.3d at 1183 (the IRS unintentionally confirmed that the purposes of exhaustion had been served because it provided a sufficient record and gave the court and plaintiff the benefit of its expertise). Filing supplemental FOIA requests in this case would be futile, and a waste of judicial time and resources. Accordingly, the claim that Facebook failed to exhaust its administrative resources should be denied.

## III.    THE COURT SHOULD DENY SUMMARY JUDGMENT TO THE GOVERNMENT BECAUSE MATERIAL FACTS CONTRADICT THE GOVERNMENT'S POSITION OR REMAIN IN DISPUTE

The Court should find that the facts show the records are readily reproducible in native format or with load files because it is technically feasible for the IRS to release the records and such production does not constitute a significant interference or burden on the IRS.

### A.    The Facts Demonstrate it is Technically Feasible For the IRS to Release the Records

It is technically feasible for the IRS Office of Chief Counsel, which is handling Facebook's FOIA requests, to produce the requested records. *See* Hartford Decl. ¶¶ 7, 11, 13 (Office of Chief Counsel has chosen to use Clearwell to process Facebook's FOIA requests); Souvandara Decl. ¶ 6, (Office of Chief Counsel has version 8.2.0 of Clearwell); Kim Decl. 3, Ex. A at 18 (Clearwell

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

enables the IRS to export native files); Souvandara Decl. ¶ 13 (Clearwell enables the IRS to export load files).

Facebook also provided additional evidence that the IRS:  (i) provided copies of Excel files to Facebook in the past, (ii) analyzed computer hard drives of IRS employees, and (iii) used e-discovery tools as part of a previous document production.  *See* Kim Decl. 2 ¶ 4; *see* Written Testimony of the Internal Revenue Service Before the House Oversight and Government Reform Committee on IRS Records Management Procedures (February 11, 2016) (published on https://oversight.house.gov/wp-content/uploads/2016/02/IRS-Statement-2-11-Document-Preservation.pdf); *see* Attachment to letter from Leonard Oursler, Area Director, Internal Revenue Service, to the Honorable Ron Wyden, Chairman, and the Honorable Orrin Hatch, Ranking Member, Committee on Finance, United States Senate, page 12 (June 13, 2014) (published on http://www.gop.gov/app/uploads/2014/04/IRS_WydenHatchResponse.pdf) ("Oursler Letter").  The IRS does not deny these facts, but claims they are irrelevant because they do not reflect the "current capability of the IRS Disclosure Offices" – an office that is not processing Facebook's FOIA requests.  Def.'s Cross-Mot. and Resp. at 13; *see* Hartford Decl. ¶¶ 11, 13.  The IRS also incorrectly speculates about Facebook's reliance on the Oursler Letter and wrongly asserts that it supports the government's arguments.  The section of the Oursler Letter cited by the IRS on page 13 of its Cross-Motion and Response is precisely what Facebook originally cited as it shows that Excel spreadsheets were produced in native format, which the IRS is similarly capable of doing in this case for all Excel spreadsheets that do not raise 26 U.S.C. § 6103 concerns or require redactions for other reasons.

The facts show that the IRS has the technical capability to produce the records as requested, but to the extent that there is any question about the IRS's capability, such facts are materially in dispute.

### B.     The Facts Demonstrate Producing Records in Native Form or With Load Files Is Not Overly Burdensome

Producing the records in their native form or with load files is not a significant interference or burden on the IRS.

(1) The IRS has the necessary technology.  *See* Hartford Decl. ¶ 13; Kim Decl. 3, Ex. A at

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

18; Souvandara Decl. ¶ 13.

(2) The IRS claim that it will take "thousands of hours" to review metadata is unsupported. IRS Special Counsel Hartford stated that he has no basis for estimating the amount of time required to review the requested metadata. Hartford Decl. ¶ 19.

(3) The IRS does not offer any evidence that many of the metadata fields for the requested records could contain exempt information.[4]

(4) To the extent the IRS incurs any one-time costs for creating processes, training, or other steps, these investments will be applicable to the inevitable future requests for native files, and should not just be considered as expenses only applicable to Facebook's requests.

The facts show that the IRS is not significantly burdened by Facebook's requests, or at a minimum, that these facts are materially in dispute.

## IV.  ALTERNATIVELY, AN EVIDENTIARY HEARING IS NEEDED TO RESOLVE ISSUES OF MATERIAL FACT REGARDING THE IRS'S ABILITY TO PRODUCE RECORDS IN THEIR NATIVE FORMAT

If the Court finds that there are material facts in dispute, Facebook requests an evidentiary hearing to resolve the significant issues of material fact regarding whether the IRS is capable of producing records in the form in which they are maintained.

There is ample precedent for discovery in FOIA cases where factual questions are at issue. In *Scudder v. CIA*, the court granted the plaintiff's motion in the alternative for discovery and/or an evidentiary hearing given the "significant issues of material fact" regarding whether the defendant was technologically capable of providing records in the requested format and whether such production would be unduly burdensome.  25 F. Supp. 3d at 49, 52.  *See also Animal Legal Def. Fund v. United States FDA*, 836 F.3d 987, 990 (9th Cir. 2016) (if there is a genuine issue of material fact in a FOIA case, "the district court should proceed to a bench trial or adversary hearing"); *Tax Analysts v. IRS*, 214 F.3d 179, 185 (D.C. Cir. 2000) (finding discovery necessary to develop factual record); *Schaffer v. Kissinger*, 505 F.2d 389, 391 (D.C. Cir. 1974) (reversing and remanding district

---

[4] For example, the "date created," "date last modified," "date sent," "date received," the bates numbering requested, "volume", "record type," "file size," "MD5 Hash," or "page count" fields could not be exempt from disclosure or require redactions.  *See* Motion to Compel, Attachment A, April 13, 2017, ECF No. 28-1.

20

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No 3:16-cv-05884-LB
Facebook's Reply in Support of Motion to Compel and Opposition to Defendant's Cross-Motion for Partial Summary Judgment

court's summary judgment with instructions that plaintiffs be permitted to undertake discovery for the "purpose of uncovering facts which might prove his right of access to the documents"); *Sun-Sentinel Co. v. DHS*, 431 F. Supp. 2d 1258, 1276 (S.D. Fla. 2006) (evidentiary hearing ordered to determine agency's "inability…to search for these records or to produce these records").

To preserve time and resources, Facebook requests an evidentiary hearing as opposed to standard discovery. As noted in *Scudder*, standard discovery can be costly for both parties in terms of both time and resources, so "[t]he parties may prefer to short-circuit an extensive discovery process and instead proceed directly to an evidentiary hearing to resolve the outstanding material factual disputes." 25 F. Supp. 3d at 52.

## **CONCLUSION**

The IRS must release the substance of its records. The records requested are readily producible and production does not constitute a significant interference with, or burden on the IRS. Finally, this Court retains jurisdiction over this case. The Court should grant Facebook's Motion to Compel and deny the IRS's Cross-Motion for Partial Summary Judgment. Alternatively, if the Court finds that there are material facts in dispute, the Court should grant Facebook's request for an evidentiary hearing.

Dated: May 26, 2017                                     Respectfully submitted,

                                                        BAKER & McKENZIE LLP


                                                        By:_____
                                                            Scott H. Frewing
                                                            Andrew P. Crousore

                                                            Attorneys for Plaintiff
                                                            Facebook, Inc.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400