United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| FACEBOOK, INC. AND SUBSIDIARIES,<br><br>Plaintiff,<br><br>v.<br><br>INTERNAL REVENUE SERVICE,<br><br>Defendant. | Case No. 16-cv-05884-LB<br><br>**ORDER GRANTING IRS'S SUMMARY-JUDGMENT MOTION; DENYING FACEBOOK'S MOTION TO COMPEL**<br><br>Re: ECF Nos. 28 & 38 |

**INTRODUCTION**

This is a Freedom of Information Act ("FOIA") case regarding the IRS's audit of Facebook's 2008–2010 tax years.[1] Facebook disagrees with the results of the audit, which increased its 2010 income by $84,915,248, and so it challenged the IRS's determination in Tax Court and separately requested audit-related documents through two FOIA requests. After the government requested a FOIA response-deadline extension, Facebook sued the IRS to compel the production of responsive documents. The IRS has since produced thousands of pages of documents.

Facebook now moves to compel production of electronic, native-form documents that contain metadata.[2] The IRS moves for partial summary judgment on that request, though, because it says

---

[1] *See generally* Compl. – ECF No. 1. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Facebook's Motion to Compel – ECF No. 28.

ORDER – No. 16-cv-05884-LB

1 Facebook did not ask for such documents in its FOIA requests and thus did not exhaust its
administrative remedies.[3]

The court held a hearing on the motions on June 15, 2017. The court grants the IRS's motion because Facebook did not exhaust its administrative remedies with respect to its request for electronic documents and metadata. The court denies Facebook's motion to compel. This order also documents the IRS's agreements about the form of production.

## STATEMENT

The IRS audited Facebook's 2008, 2009, and 2010 tax years.[4] The audit focused "on the 'transfer price' at which Facebook licensed certain technology and other intangibles to [its] Irish affiliate."[5] And it resulted in a July 2016 notice of deficiency, in which the IRS alleged "that the intangible property transferred . . . had a net present value of $13,883,630,000, thereby increasing Facebook's income in 2010 by $84,915,248."[6] The IRS determined that Facebook had an income-tax deficiency.[7]

According to Facebook, the IRS "did not provide any economic analysis or otherwise express its position."[8] So, Facebook sued the IRS in Tax Court "by filing a Petition for a redetermination of its deficiency," and separately sought audit-related documents through FOIA — the subject of this litigation.[9]

---

[3] IRS's Motion for Summary Judgment – ECF No. 38.

[4] Compl. ¶ 11.

[5] 4/13/2017 Kim Decl. – ECF No. 29, ¶ 2.

[6] Compl. ¶ 12.

[7] Hartford Decl. – ECF No. 38-1, ¶ 5.

[8] Compl. ¶ 12.

[9] *See id.* ¶¶ 12–13, 14, 24; Hartford Decl. ¶ 6.

## 1. Facebook's Initial FOIA Requests

Facebook submitted two FOIA requests in August 2016: one to the IRS's Washington, D.C. Disclosure Office (the "National Office Request"); and one to the IRS's San Jose Disclosure Office (the "Examination Division Request").[10] In the National Office Request, Facebook requested:

> 1. All documents contained in the administrative file, legal file, or other files of the IRS National Office or Area Counsel relating to any request for field service advice, technical assistance, or other advice in connection with the tax audit of Facebook for its 2008, 2009, and 2010 tax years, whether maintained in electronic or hard copy.
>
> 2. All communications, including e-mails, involving members of the IRS National Office, Area Counsel, or any other IRS employees or contractors, regarding, referring, or relating to the audit of Facebook's 2008, 2009, and 2010 tax years, whether maintained in electronic or hardcopy format.[11]

And in the Examination Division Request, Facebook requested:

> 1. All documents contained in the Examination Division's administrative files for Facebook for 2008, 2009, and 2010, including but not limited to any of the following items described in the Internal Revenue Manual, whether maintained in electronic or hardcopy format . . . .
>
> 2. All communications, including e-mails, involving the members of the IRS Examination Team for Facebook, or any other IRS employees or contractors, regarding, referring, or relating to the audit of Facebook's 2008, 2009, and 2010 tax years, whether maintained in electronic or hardcopy format.
>
> 3. All documents constituting any Tax Litigation Division Legal File, Tax Litigation Advice File, Miscellaneous Law File, Chief Counsel Office Files, or Regional Counsel Office Files for Facebook's 2008, 2009, and 2010 tax years, whether maintained in electronic or hardcopy format.
>
> 4. All documents contained in the administrative files of the IRS National Office and Area Counsel relating to any request for field service advice, technical assistance, or other advice in connection with the tax audit of Facebook for 2008, 2009, and 2010.[12]

The IRS initially replied in two letters in September 2016.

First, on September 7, the IRS said that it would not be able to respond to the requests within the 20-day statutory time limit.[13] The IRS extended the deadline by 10 days (as permitted by FOIA), requested from Facebook an additional extension (to December 8, 2016), and informed

---

[10] Compl. ¶¶ 14, 24; 10/11/2016 Kim Decl. – ECF No. 1-5, ¶ 2, Exs. A & B.

[11] 10/11/2016 Kim Decl., Ex. A (National Office Request).

[12] *Id.*, Ex. B (Examination Division Request).

[13] *Id.* ¶ 3, Ex. C.

ORDER – No. 16-cv-05884-LB    3

1  Facebook that it could file suit after September 22, 2016 (*i.e.* if Facebook did not agree to the
2  December 8 extension).[14]

3  Second, on September 23, the IRS explained that the search for responsive documents was
4  "expected to take at least 3–4 months to be completed and [was] expected to result in a massive
5  number of records, which [would] take an extended period of time to review."[15] The IRS also
6  estimated an initial cost of $19,598 to process Facebook's request, and demanded advance
7  payment.[16] Facebook made the payment.[17]

8  Facebook did not, however, wait for the IRS's requested December 8 deadline. It instead filed
9  this case on October 11, "seek[ing] the production of documents and records" that it asserts the
10 IRS improperly withheld.[18] As of that time, the IRS had not released any responsive documents [19]

## 2. The IRS's Disclosures to Date

Since Facebook filed suit, though, the IRS has produced documents in six batches between November 28, 2016, and March 29, 2017.[20] In total, the IRS "has collected approximately 1.9 million documents to respond to [Facebook's] FOIA requests," approximately 320,000 of which are potentially responsive.[21] And "the IRS has reviewed and released over 68,000 pages of records to [Facebook] since commencement of this action."[22]

Those documents included "Facebook's tax returns and documents provided by Facebook to the IRS during the 2008–2010 tax audit."[23] For example, the IRS released a 16,000-page PDF

---

[14] *Id.*
[15] *Id.* ¶ 4, Ex. D.
[16] *Id.*
[17] *Id.* ¶ 4, Ex. E.
[18] *See* Compl. ¶ 13.
[19] *See Id.* ¶¶ 20, 30.
[20] 4/13/2017 Kim Decl. ¶ 7.
[21] Hartford Decl. ¶ 12.
[22] *Id.* ¶ 14.
[23] 4/13/2017 Kim Decl. ¶ 7.

ORDER – No. 16-cv-05884-LB    4

1 Excel spreadsheet that Facebook had previously given to the IRS.[24] But, Facebook says, it "is
2 wholly unable to discern what edits, changes, or comments the IRS may have made to the file
3 because it is impossible to reconstruct the file from more than 16,000 pages of gibberish."[25]

During January–March 2017, Facebook discussed with the IRS "its request for certain native electronic files in the format in which the IRS maintains them along with email that includes a standard load file with typical email metadata."[26] But the IRS refused to "provide files in the electronic form in which [it] maintains [them]," or to "provide email in a standard load file with typical metadata."[27] The IRS says that "[t]he metadata sought by [Facebook] in this case almost certainly includes information that is statutorily exempt and/or prohibited from disclosure."[28] "The IRS cannot release metadata to [Facebook] — whether in a native file format with retained metadata or as part of a separate load file — without first reviewing the metadata to ensure that the material is not exempt from disclosure."[29]

### 3. Facebook's Pending Requests for Electronic, Native-Form Documents

Facebook's requests for electronic documents (or, alternatively, "load files") and related metadata are the subject of the current dispute.

Facebook moves to compel the IRS's release of those documents and data.[30] Specifically, Facebook seeks an order compelling the IRS to produce (1) "spreadsheet (e.g., Microsoft Excel), word processing document (e.g., Microsoft Word), and presentation (e.g., Microsoft PowerPoint) files that the IRS maintains in electronic format in their native electronic form;" and (2) "emails in

---

[24] *Id.* ¶ 8.
[25] *Id.*
[26] *Id.* ¶ 9.
[27] *Id.*
[28] Hartford Decl. ¶ 15; 2d Hartford Decl. – ECF No. 41-1, ¶ 7.
[29] Hartford Decl. ¶ 16.
[30] Facebook's Motion to Compel – ECF No. 28.

ORDER – No. 16-cv-05884-LB 5

1  the electronic format in which the IRS maintains them, or, if the IRS elects, in a standard 'load

2  file' with typical metadata."[31]

3  The IRS moves for partial summary judgment and argues (among other things) that

4  Facebook's initial FOIA requests did not ask for electronic, native-form documents, and thus this

5  court lacks jurisdiction because Facebook did not exhaust its administrative FOIA remedies.[32]

6  The court held a hearing on the parties' motions on June 15, 2017.

## GOVERNING LAW

### 1. Summary-Judgment Standard

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need

---

[31] *Id.* at 6.

[32] IRS's Motion for Summary Judgment – ECF No. 38.

1  only point out 'that there is an absence of evidence to support the nonmoving party's case.'")

2  (quoting *Celotex*, 477 U.S. at 325).

   If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

   In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

### 2. Summary Judgment in FOIA Cases

"Most FOIA cases are resolved by the district court on summary judgment, with the district court entering judgment as a matter of law." *Animal Legal Defense Fund v. United States Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (per curiam). "Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits describing the documents sought." *Lion Raisins v. United States Dep't of Agriculture*, 354 F.3d 1072, 1082 (9th Cir. 2004), *overruled on other grounds by Animal Legal Defense Fund*, 836 F.3d 987; *see also Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) ("[I]t is now well established that summary judgment on the basis of such agency affidavits is warranted if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."). To prevail on summary judgment, the government "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from

the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (quoting *Nat'l Cable Television Ass'n, Inc. v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)), cert. denied, 445 U.S. 927 (1980).

**ANALYSIS**

The threshold issue is whether Facebook exhausted its administrative remedies. *See Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (finding that district court "incorrectly decided the threshold issue of exhaustion" in FOIA case). The IRS argues that Facebook's FOIA requests did not ask for the electronic-format documents (read: metadata) that it now seeks, its requests were accordingly incomplete, and so it has not exhausted its administrative remedies.[33] Facebook, on the other hand, urges that it requested documents "in the form in which they were maintained" (*i.e.* electronic, native form), and, in any event, it would be futile to file a new FOIA request.[34]

**1. Facebook Has Not Exhausted Its Administrative Remedies**

In FOIA cases, a party must exhaust administrative remedies "before that party can seek judicial review." *In re Steele*, 799 F.2d 461, 465 (9th Cir. 1986); *see also Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) ("Exhaustion of administrative remedies is generally required before seeking judicial review . . . ."). The purpose of exhaustion is to allow "the opportunity for the *agency* to exercise its discretion and expertise and the opportunity to make a record for the district court to review." *In re Steele*, 799 F.2d at 466 (emphasis in original).

To exhaust those remedies, the requesting party "must request specific information in accordance with published administrative procedures . . . and have the request improperly refused before that party can bring a court action." *Id.* (citing 5 U.S.C. § 522(a)(1)–(4)) (internal citations omitted). "Where no attempt to comply fully with agency procedures has been made, the courts will assert their lack of jurisdiction under the exhaustion doctrine." *Id.* (citing *Hedley v. United*

---

[33] *See* IRS's Motion for Summary Judgment at 12–14.
[34] *See* Facebook's Reply – ECF No. 39 at 18–22.

ORDER – No. 16-cv-05884-LB  8

*States*, 594 F.2d 1043, 1044 (5th Cir. 1979)). Indeed, "only a valid FOIA request can trigger an agency's FOIA obligations," and a requester's "'failure to file a perfected request . . . constitutes failure to exhaust administrative remedies.'" *Flowers v. IRS*, 307 F. Supp. 2d 60, 67 (D.D.C. 2004) (quoting *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002)).

Under FOIA and the IRS's regulations, "upon any request for records which . . . reasonably describes such records," the IRS must promptly make such records available. 5 U.S.C. § 552(a)(3)(A); 26 C.F.R. § 601.702(c)(1). In doing so, the IRS must "provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B); 26 C.F.R. § 601.702(c)(2). The request must reasonably describe the records sought. 26 C.F.R. § 601.702(c)(4)(D), (5).

In *Citizens for Responsibility and Ethics in Washington v. Department of Education* ("*CREW*"), CREW "object[ed] to [the Department's] release of emails [in paper form] because the paper versions lack[ed] what CREW argue[d] [was] 'critical information, including complete email addresses for the senders and recipients' and BCC recipient information, as well as metadata." 905 F. Supp. 2d 161, 171 (D.D.C. 2012). Noting that "FOIA only requires production of responsive records 'in any form or format requested by the person if the record is readily reproducible by the agency in that form or format,'" the court denied CREW's argument for two reasons. *Id.* at 171–72 (quoting 5 U.S.C. § 552(a)(3)(B)). First, "CREW did not request that [the Department] *produce* its records in electronic format, much less electronic format with metadata." *Id.* at 171 (emphasis in original). The Department thus "had no obligation to produce the documents in any particular format." *Id.* The court also noted that the Department's email records were not "readily reproducible" in electronic format because of its retention system's limitations. *Id.* Second, the court declined to adopt CREW's argument that "a government agency must produce electronic copies and/or metadata to comply with FOIA" because it did not see "any basis to *impose* an electronic copy obligation on a federal agency." *Id.* at 172 (emphasis in original). "CREW's argument that it [was] entitled to metadata and blind copy addresses of all emails, when that information cannot be readily produced by [the Department], fail[ed] as a matter of law." *Id.*

Here, as in *CREW*, Facebook now requests production of IRS documents in electronic, native format so that it can access those documents' metadata.[35] But like the plaintiff in *CREW*, Facebook did not originally ask the IRS to produce the records in native format, much less with email metadata, Excel spreadsheet formulas, Word document comments and revisions, or PowerPoint presentation notes.[36] Facebook also did not request emails in "load file" images, which it now suggests as an alternative.[37] Facebook instead requested that the IRS produce all documents, in whatever form maintained:

1. All documents contained in the administrative file, legal file, or other files of the IRS National Office or Area Counsel relating to any request for field service advice, technical assistance, or other advice in connection with the tax audit of Facebook for its 2008, 2009, and 2010 tax years, *whether maintained in electronic or hard copy*.

2. All communications, including e-mails, involving members of the IRS National Office, Area Counsel, or any other IRS employees or contractors, regarding, referring, or relating to the audit of Facebook's 2008, 2009, and 2010 tax years, *whether maintained in electronic or hardcopy format*.[38]

Facebook went on to explain that the term "documents" was used expansively and intended to include, "by way of illustration and without limitation," many items (*e.g.* contracts, communications, reports, e-mails, transcripts, notes, worksheets, photographs, drawings, drafts, calendars, workpapers, telecopies), including electronically stored items and "any draft or prior version of a document."[39] Facebook also clarified that "the term 'administrative file' refers to all documents, including drafts and handwritten notes, in the IRS's possession."[40] Facebook indicated that it did "not wish to inspect the records, but desire[d] copies to be made in accordance with Treas. Reg. § 601.702(c)(4)(i)(G)."[41] That regulation says only that the initial request for records

---

[35] *See* Facebook's Motion to Compel at 6.

[36] *See id.* at 13–14; Facebook's Reply at 6–7.

[37] *See* Facebook's Motion to Compel at 15–16; Facebook's Reply at 15–17.

[38] 10/11/2016 Kim Decl., Ex. A (National Office Request); *see also id.*, Ex. B (Examination Division Request) (emphasis added).

[39] *Id.*, Exs. A & B.

[40] *Id.*

[41] *Id.*

1  must "[s]tate whether the requester wishes to inspect the records or desires to have a copy made
2  and furnished without first inspecting them." 26 C.F.R. § 601.702(c)(4)(i)(G).

In sum, Facebook did not ask the IRS to produce documents in electronic, native format that contained metadata. It asked for all records "whether maintained in electronic or hardcopy format," but did not specify the format for production. As Facebook points out, metadata is an important part of electronic records in today's world.[42] But as the *CREW* court noted, the court does not see "any basis to *impose* an electronic copy obligation on a federal agency" when the requester did not specify that form. *Citizens for Responsibility and Ethics in Wash.*, 905 F. Supp. 2d at 172 (emphasis in original); *see also* 5 U.S.C. § 552(a)(3)(B); 26 C.F.R. § 601.702(c)(2)(i) (the IRS must "provide the responsive record or records in the form or format requested if the record or records are readily reproducible by the IRS in that form or format").

With respect to its request for electronic-format documents, then, Facebook did not submit a valid FOIA request in compliance with the IRS's regulations. The request did not trigger the IRS's FOIA obligations, the IRS did not have an opportunity to exercise its discretion in analyzing the request, and so Facebook has not exhausted its administrative remedies.

### 2. Facebook's Failure to Exhaust its Remedies Bars its Claim for Electronic, Native-Form Documents (Or, Alternatively, "Load Files")

Facebook argues that, even if it failed to exhaust its administrative remedies, the court has subject-matter jurisdiction because (1) FOIA exhaustion is prudential, not jurisdictional, or (2) even if it is jurisdictional, it would be futile to file a revised FOIA request with the IRS.[43]

Many courts treat FOIA exhaustion as a prudential, rather than a jurisdictional, bar to district-court litigation. *See Hull v. IRS*, 656 F.3d 1174, 1181–82 (10th Cir. 2011) ("[W]e seize this opportunity for clarity by joining the majority of our sister circuits in concluding exhaustion under FOIA is a prudential consideration rather than a jurisdictional prerequisite."); *Hidalgo*, 344 F.3d at 1258 ("[T]he exhaustion requirement is not jurisdictional because the FOIA does not

---

[42] *See* Facebook's Motion to Compel at 14.
[43] Facebook's Reply at 19–22.

ORDER – No. 16-cv-05884-LB          11

unequivocally make it so."); *see also Andrus v. United States Dep't of Energy*, 200 F. Supp. 3d 1093, 1101 (D. Idaho 2016) (noting that "a majority of circuits have expressly held that the FOIA exhaustion requirement is a 'jurisprudential' doctrine" and interpreting the Ninth Circuit's opinion in *In re Steele* to "support[] a conclusion that exhaustion is a jurisprudential doctrine, rather than a jurisdictional one"). But, even so, "exhaustion remains a hurdle that FOIA plaintiffs must generally clear in order to obtain relief through the courts." *Hull*, 656 F.3d at 1183. "It is just not a jurisdictional hurdle." *Id.* And, as a prudential consideration, the exhaustion requirement will bar judicial review "if both (1) the administrative scheme at issue and (2) the purposes of exhaustion support such a bar." *Flowers*, 307 F. Supp. 2d at 66 (citing *Wilbur*, 355 F.3d at 677); *Hidalgo*, 344 F.3d at 1258–59 ("[A]s a jurisprudential doctrine, failure to exhaust precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar.") (internal quotations omitted). So, for example, a court should dismiss a FOIA claim where the agency did not have the opportunity "to implement a review of its FOIA redactions" because the "underlying policy of exhaustion — to provide the agency with an opportunity to review its own decisionmaking process before judicial intervention — must still carry the day." *Andrus*, 200 F. Supp. 3d at 1102.

In contrast, some courts — including some courts in this district — have applied FOIA's exhaustion requirement as jurisdictional in nature. *See, e.g.*, *Gonzales and Gonzales Bonds and Ins. Agency Inc. v. United States Dep't of Homeland Sec.*, No. C-11-02267 DMR, 2012 WL 1815632, at *3 (N.D. Cal. May 17, 2012) ("In cases where a party has made 'no attempt to comply fully with agency procedures,' a court will assert its lack of jurisdiction under the doctrine.") (quoting *In re Steele*, 799 F.2d at 466); *Missud v. SEC*, No. C-12-0161 DMR, 2012 U.S. Dist. LEXIS 51090, at *10 (N.D. Cal. Apr. 11, 2012) ("When a FOIA plaintiff brings suit without first exhausting administrative remedies, the lawsuit is subject to dismissal for lack of subject matter jurisdiction."); *cf. Rosenfeld v. United States Dep't of Justice*, No. C 07-03240 MHP, 2008 WL 3925633, at *7 (N.D. Cal. Aug. 22, 2008) ("In FOIA cases, 'exhaustion is a prudential consideration rather than a jurisdictional requirement.'") (quoting *Wilbur*, 355 F.3d at 677). Those courts have, however, recognized exceptions to the jurisdictional bar where "failure to exhaust

would not undermine the 'purposes and policies' behind the requirement." *Gonzales*, 2012 WL 1815632 at *3. "For example, courts will entertain a case when exhaustion 'would have been futile.'" *Missud*, 2012 U.S. Dist. LEXIS 51090 at *11 ("To show futility, '[i]t must appear that pursuing available administrative remedies would have been clearly useless, that the ultimate denial of relief was a certainty.'") (quoting *Marine Mammal Conservancy, Inc. v. Dep't of Agriculture*, 134 F.3d 409, 413 (D.C. Cir. 1998) (alteration in original)).

Whether analyzed prudentially or jurisdictionally (with a futility exception), the ultimate question is the same: does the failure to exhaust undermine the purposes and policies of FOIA exhaustion — *i.e.* to give the IRS a chance to exercise its discretion and to review its decisionmaking process before judicial intervention? Put another way: would dismissal promote that purpose?

The answer here is yes. Judicial intervention now would deprive the IRS the opportunity to exercise its discretion and analyze Facebook's (now clarified) request for electronic documents and metadata, and dismissal would give the IRS the chance to do so. The court is not convinced that Facebook's refiling of a revised FOIA request to specify the format (and content) of the records it seeks would be futile. "[T]he futility exception to the exhaustion requirement should not be applied where the agency has not had an opportunity to develop a record," *Joint Bd. of Control of Flathead, Mission & Jocko Irrigation Dists. v. United States*, 862 F.2d 195, 200 (9th Cir. 1988); and, here, the IRS has not had the opportunity to develop a record. Although the IRS may in the end determine that it cannot reasonably reproduce the records in the format sought — for example, it submits evidence that (1) it is not feasible to produce the type of metadata Facebook seeks, and (2) even if it was, it would take "thousands" of hours to review it for exempt content[44] — it deserves the chance to make that determination.

---

[44] Burger Decl. – ECF No. 28-4, ¶¶ 11–13, 18; Hartford Decl. ¶¶ 15–19; 2d Hartford Decl. ¶¶ 7–14.

\* \* \*

In sum, whether jurisdictional or prudential, Facebook's failure to exhaust its administrative remedies undercuts the purpose of exhaustion. The court therefore grants the IRS's motion for partial summary judgment with respect to Facebook's request for electronic, native-form documents and related metadata.

This order does not, however, in any way limit the IRS's apparent agreement to produce responsive documents to Facebook's "clarified" FOIA request.[45] The IRS interprets Facebook's reply brief to mean it "would be satisfied if only the IRS would agree to produce records in an electronic format that would allow it to review (1) 'data [and formulas] as organized in a Microsoft Excel file, and (2) written comments in Microsoft Word and PowerPoint.'"[46] The IRS says that had Facebook made such a request, it "likely could have accommodated it."[47]

In fact, the IRS says that, without further court action, it will provide to Facebook "segregable non-exempt track changes or comments associated with documents, spreadsheets, and presentation files," and "segregable non-exempt presenter notes from PowerPoint presentation files."[48] The IRS also says that "*if* [it] were required to review metadata, that it would produce a load file" for non-exempt excel spreadsheets.[49] And at the June 15 hearing, the IRS indicated that it is *willing* to produce — to the extent it is technologically capable, and without conceding that it is *required* to produce — the following categories of information:

| Word Documents (.doc/.docx) | Excel Spreadsheets (.xls/.xlsx) | PowerPoint Presentations (.ppt/.pptx) | E-mails |
|---|---|---|---|
| • Comments<br>• Track changes<br>• Dates created and reviewed[50] | • Comments<br>• Formulas | • Presentation notes | • Attachments produced in the same manner as standalone records[51] |

---

[45] *See* IRS's Reply – ECF No. 41 at 6; 2d Hartford Decl. ¶¶ 15–21.

[46] IRS's Reply at 6.

[47] *Id.*

[48] 2d Hartford Decl. ¶¶ 18–21.

[49] *Id.* ¶ 17 (emphasis in original).

[50] The parties and the court discussed (without resolving) whether it is possible to selectively strip

ORDER – No. 16-cv-05884-LB 14

The IRS indicated it is willing to produce these records in native form, except where exemptions apply, necessitating a different process, and subject, of course, to the ordinary FOIA processes for withholding and redaction. The IRS could not confirm whether it is able to produce native-format emails or whether it is willing to produce email load files with typical metadata. The IRS's counsel will confer with the Service and submit an update about its ability and willingness to do so by June 30, 2017. If the IRS needs more time to consider the request, it may ask for it.

The IRS also expressed concern about FOIA attorney's fees if it produces these records *willingly* instead of by court order. Given the procedural context of the court's grant of summary judgment, the court is not ordering the process and leaves it to the parties to discuss this issue. As discussed at the hearing, the court thinks the parties have a shared interest in the IRS's voluntary production of information responsive to Facebook's clarified, native-format and metadata request.

## CONCLUSION

The court grants the IRS's motion for partial summary judgment and dismisses without prejudice Facebook's claim for documents in electronic, native-file format with metadata. Dismissal is without prejudice to Facebook's refiling a new FOIA request. The court denies Facebook's motion to compel.

The court encourages — but does not require — the IRS to produce the documents discussed above to facilitate a more expeditious resolution of the matter and to avoid the delay caused by another FOIA request.

**IT IS SO ORDERED.**

Dated: June 19, 2017

LAUREL BEELER
United States Magistrate Judge

---

metadata so that, for example, the IRS could remove some metadata (that Facebook is not interested in), while leaving the rest (*e.g.* the dates created and revised). The IRS confirmed, though, that it can wipe (most) metadata while retaining comments. If the dates created and revised can be produced without creating a load file — which the IRS urges is a separate, new record not required by FOIA — then the IRS expressed its willingness to do so.

[51] The parties agreed that standard "near-duplicate" procedures would apply.

ORDER – No. 16-cv-05884-LB    15